UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISA RICHMOND,

    Plaintiff,

v.

    Case No. 14-14892

    Hon. John Corbett O'Meara

RUBAB HUQ, M.D., *et al.*,

    Defendants.
_____/

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Before the court are twelve motions for summary judgment filed by Defendants. The court heard oral argument on September 22, 2016, and took the matter under advisement. For the reasons explained below, Defendants' motions are granted.

**BACKGROUND FACTS**

Plaintiff Melisa Richmond alleges that she was denied medical treatment while at the Wayne County Jail from December 2012 to February 2013. Defendants are physicians Rubab Huq and Thomas Clafton; nurse practitioner Marie Shoulders; resident nurses Jacqueline Lonberger, Shevon Fowler, April Williams, Felecia Coleman, and Maxine Hawk; medical assistant Danielle Allen;

and psychiatric social workers Agron Myftari and Patricia Rucker.

Plaintiff was arrested during a domestic disturbance on December 25, 2012. While in the back of the police car, Plaintiff set her shirt on fire with a lighter and suffered burns to her right breast and torso. The police took her to the hospital, where Plaintiff was diagnosed with first and second degree burns. Plaintiff was discharged the same day into police custody, with prescriptions for pain medication and Silvadene skin cream.

Plaintiff was taken to the Wayne County Jail after her arraignment on December 26, 2012. Plaintiff was booked and then screened for medical and mental health issues by a medical assistant. Defs.'s Ex. 16. The medical assistant referred Plaintiff for medical and mental health evaluations. Id. Two hours later (at 10:30 p.m.), Defendant Nurse Shevon Fowler examined Plaintiff, changed her wound dressing, and phoned the on-call doctor. The doctor prescribed Hydrocodone (Lortab), a narcotic painkiller, and daily wound dressing changes.

The next morning, on December 27, 2012, Defendant Nurse Maxine Hawk changed Plaintiff's dressing in the jail clinic. Plaintiff was given two doses of Hydrocodone that day. On December 28, 2012, Plaintiff received three doses of Hydrocodone. She was also examined by Defendant Rubab Huq, M.D., who changed her wound dressing. See Defs.' Ex. 18 (electronic medical record). In

addition to the treatment previously ordered, Dr. Huq prescribed antibiotics and Motrin for pain and ordered a follow up for January 10, 2013. Plaintiff was permitted to carry the Motrin on her person and dispense it herself.

Also on December 28, Plaintiff saw Defendant Agron Myftari, a psychiatric social worker, who provided mental health screening. Plaintiff told Myftari about her history of bipolar disorder and current medications (Prozac and Xanax). Myftari found Plaintiff to have "mild-moderate symptoms of depression and anxiety" but noted that she "denied suicidal ideation." Pl.'s Ex. 13. Myftari set up an appointment for Plaintiff with a psychiatrist for January 11, 2013. In doing so, Myftari judged that Plaintiff did not require in-patient mental health treatment, but was stable enough to wait for an appointment in the normal course. See Myftari Dep. at 79-80.

On December 29, 2012, Plaintiff received three doses of Hydrocodone. She allegedly refused a dressing change from Defendant Nurse Jacqueline Lonberger. Plaintiff contends that Nurse Lonberger was unnecessarily rough in attempting to change the dressing, causing her pain. Nurse Lonberger did change Plaintiff's dressing the next day, when Plaintiff also received two doses of Hydrocodone.

From December 31, 2012, until January 4, 2013, Plaintiff's dressings were changed once a day by Nurse Hawk, with the exception of January 3, when

Plaintiff was in court. On those dates, Plaintiff received two doses of Hydrocodone.

On January 5, 2013, Plaintiff's dressing was changed by Defendant Medical Assistant Danielle Allen. She received two doses of Hydrocodone. On January 6, 2013, there is no record of a dressing change, but Plaintiff received two doses of Hydrocodone. On January 7, 2013, Allen changed Plaintiff's dressing and Plaintiff was given three doses of Hydrocodone. On that same date, Plaintiff saw Defendant Patricia Rucker, a psychiatric social worker, to ask about obtaining psychiatric medication. Because Plaintiff did not mention that she had already been evaluated, Rucker sent Plaintiff to the mental health unit for an evaluation. There, the social worker (Jim Gilfix) found that Plaintiff already had an appointment for January 11, 2013, and that she "seems stable [and] denies feeling suicidal." Defs.' Ex. 18. Gilfix determined that Plaintiff could wait for her January 11 appointment.

Also on January 7, 2013, Plaintiff submitted a grievance, complaining that her "medical needs are being neglected . . . [Their] excuse is they are busy ... the nurse won't come & give me clean bandages or burn cream here I need to go to the hospital. . . ." Pl.'s Ex. 8. It does not appear that the grievance was acted upon because it was not referred for action until Plaintiff had already been released from

jail.

Although Plaintiff received three doses of Hydrocodone on January 8, there is no record of a dressing change. On January 9, 2013, Plaintiff received three doses of Hydrocodone and Allen changed her dressing. On January 10, 2013, Plaintiff received two doses of Hydrocodone. Allen noted that she was unable to change Plaintiff's dressing because Plaintiff was in court.

On January 11, Plaintiff received two doses of Hydrocodone. She was also triaged by Nurse April Williams before being seen by Thomas Clafton, M.D., and Nurse Practitioner Marie Shoulders. Dr. Clafton ordered addition medications for Plaintiff: Ultram (Tramadol, a painkiller), Santyl (ointment), and Silvadene (antimicrobial ointment). On that same day, Plaintiff also saw psychiatrist Lisa Hinchman, who diagnosed Plaintiff with bipolar disorder, depression, and PTSD. Dr. Hinchman prescribed Vistaril (anti-anxiety), Celexa (antidepressant), and Trazodone (antidepressant).

On January 12, 2013, Plaintiff received three doses of Hydrocodone and her dressing was changed at the jail clinic. On January 13, 2013, Plaintiff received three doses of Hydrocodone; and she received two doses the next day. Her prescription for Hydrocodone expired on January 13. Plaintiff's prescription for the painkiller Tramadol was in effect from January 11 to January 24, 2013.

Plaintiff was provided a refill of ibuprofen on February 5, 2013.

On January 16, 19, 20, 21, and 22, Plaintiff's dressings were changed in the jail clinic. On January 21, 2013, Medical Assistant Allen noted that she provided extra dressings to Plaintiff so that she could change the dressing herself after she showered. On January 27, 2013, Plaintiff was provided with wound dressing supplies to change her dressing herself.

On January 29, 2013, Plaintiff was screened by Defendant Nurse Felecia Coleman before she was seen by Nurse Practitioner Shoulders. Plaintiff complained that "her burns are worse and infected." When Shoulders saw her, she complained of having a cold and seasonal allergies. Plaintiff also claimed that she has not had her creams for the past week and has been unable to do dressing changes. See Defs.' Ex. 18. Shoulders noted that Plaintiff's burn "has various stages of healing" but "no odor present, no signs of infection." Id. Shoulders noted that dressing changes are to be done "2 times daily by patient" and that "Patient verbalized understanding of instructions and willingness to comply." Id.

After January 29, 2013, there is no record of any further formal medical encounters before Plaintiff's release from jail on February 13, 2013. After her release, Plaintiff visited Dr. Andrei Katychev regarding her burn wound. Dr. Katychev applied Silvadene cream and a dressing and did not note any sign of

infection. He referred Plaintiff to the Detroit Medical Center's Burn Center for further evaluation.

Plaintiff went to the Detroit Medical Center on February 19, 2013. Because Plaintiff's wound was not completely healing by itself, the DMC determined that a skin graft would be appropriate and performed the procedure on February 22, 2013.

Plaintiff filed this action on December 24, 2014, alleging that Defendants violated her Eighth Amendment right to be free from cruel and unusual punishment. Specifically, Plaintiff contends that the medical staff did not ensure that she was provided all of the dressing changes and pain medication that was ordered, despite her requests. Plaintiff also complains that she received no psychiatric treatment or medication during her first twenty days in the Wayne County Jail.

## LAW AND ANALYSIS

A prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001). An Eighth Amendment claim has two components, one objective and the other subjective. Comstock, 273 F.3d at 702. "To satisfy the

objective component, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Id. (citing Farmer, 511 U.S. at 837). "The requirement that the official [has] subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." Comstock, 273 F.3d at 703 (citing Estelle, 429 U.S. at 106).

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted "for the very purpose of causing harm or with knowledge that harm will result." Instead, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."

Id. at 703 (citations omitted). In other words, "[d]eliberate indifference is characterized by obduracy or wantonness – it cannot be predicated on negligence,

inadvertence, or good faith error." Reilly v. Vadlamudi, 680 F.3d 617, 624 (6th Cir. 2012). Moreover, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (1976). See also Alspaugh v. McConnell, 643 F.3d 162, 169 (6th Cir. 2011) ("However, it is possible for medical treatment to be 'so woefully inadequate as to amount to no treatment at all.'").

Plaintiff contends that she should have received wound dressing changes twice a day and that she did not receive all of the prescribed doses of pain medication.[1] The medical record does indicate that there were days when dressing changes or doses of pain medication were missed. There is no evidence, however, that any treatment was intentionally withheld. (For example, the record indicates that doses of pain medication or dressing changes may have been missed because Plaintiff was in court or sleeping.) This distinguishes this case from Boretti v. Wiscomb, 930 F.2d 1150 (1991) in which the nurse refused to contact a doctor,

---

[1] Although the hospital discharge instructions called for twice a day dressing changes, the on-call jail doctor prescribed dressing changes once per day. Plaintiff's treatment sheet also called for dressing changes once per day. See Defs.' Ex. 17, Ex. 18, EMR Note 1/11/13.

give the plaintiff dressings for his wound, or give him pain medication. See also Alspaugh, 643 F.3d at 169 (noting that although the plaintiff "certainly would have desired more aggressive treatment, he was at no point denied treatment").

Additionally, Plaintiff has not specifically identified a single Defendant who refused to provide treatment for her wound, or provided treatment "so woefully inadequate as to amount to no treatment at all." Id. Rather, Plaintiff lumps together the alleged failings of the medical staff. "Plaintiff must state a plausible constitutional violation against *each individual defendant* – the collective acts of defendants cannot be ascribed to each individual defendant." Reilly, 680 F.3d at 626 (emphasis added). Plaintiff has not identified a Defendant who was responsible for changing her dressings or giving her pain medication on any given day and who refused to do it or ignored the responsibility. At most, any failures in this regard appear to be the result of negligence, not deliberate indifference.

Specifically, with respect to Dr. Clafton and Dr. Huq, Plaintiff complains that they should have sent her to a burn specialist and provided her with supplies to change her own dressing. Although Plaintiff was dissatisfied with the treatment she received from Drs. Clafton and Huq, it cannot be termed "so woefully inadequate as to amount to no treatment at all." Alspaugh, 643 F.3d at 169. Plaintiff's disagreement with how Drs. Clafton and Huq should have handled their

-10-

responsibilities does not state a claim for deliberate indifference.

With respect the nursing staff – Shevon Fowler, Jacqueline Lonberger, Maxine Hawk, Marie Shoulders, April Williams, Felecia Coleman, and Danielle Allen – Plaintiff primarily contends that they did not provide ordered dressing changes and/or provide dressing supplies. As discussed above, Plaintiff fails to specify any particular nurse or medical assistant who was responsible for changing Plaintiff's dressing on a particular date and who failed to do so.

Plaintiff also claims that Nurse Lonberger cleaned her wound in a manner that caused her pain. See also Lonberger Dep. ("I'm quite sure I told her it's going to hurt, it's a burn."). This does not rise to the level of deliberate indifference. See, e.g., Quezada v. Larenson, 2015 WL 2399722, at *2 (C.D. Ill. May 18, 2015) ("In Plaintiff's case, a reasonable juror would be hard-pressed to say that cleaning a wound, applying ointment and bandages to prevent infection, and then administering pain medication was a substantial departure from the treatment that Plaintiff would have received from any professional medical provider. At least some pain could be expected from the nature of the injury, and Plaintiff admitted in his deposition that there was no other way to remove the grits from his wound."); Edwards v. Wheat, 2015 WL 926071, at *6 (N.D. Ala. Mar. 4, 2015) ("In this case, even assuming the nurse defendants caused the plaintiff pain by removing a portion

-11-

of his skin while attempting to remove debris and necrotic tissue from his wound and even if such action could constitute medical malpractice, that action would not rise to the level of a constitutional violation.").

Plaintiff also complains that she had to wait 20 days before seeing a psychiatrist and receiving psychiatric medications. Plaintiff contends that Huq, Clafton, Myftari, Rucker, and Fowler all were aware of her mental health history the fact that she had been taking psychiatric medication. Plaintiff has not shown, however, that she had a psychiatric need requiring immediate treatment at the Wayne County Jail. Myftari determined that Plaintiff was stable and that she could wait for her appointment with the psychiatrist, as did Gilfix, another psychiatric social worker who is not a defendant here. Plaintiff was not ignored or denied treatment; rather, a judgment was made that she could wait. This is the type of medical judgment that federal courts are generally reluctant to second guess. Under the circumstances presented here, Plaintiff cannot show any of the Defendants acted with deliberate indifference in determining that she did not need immediate mental health treatment.

Because Plaintiff has not shown that any of the individual defendants were deliberately indifferent to her medical needs, she also cannot establish liability on the part of Wayne County. See Blackmore v. Kalamazoo Cty., 390 F.3d 890, 900

(6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.").

## **ORDER**

IT IS HEREBY ORDERED that Defendants' motions for summary judgment [Docket Nos. 53-64] are GRANTED.

                                                              s/John Corbett O'Meara
                                                              United States District Judge

Date: October 5, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, October 5, 2016, using the ECF system.

                                                              s/William Barkholz
                                                              Case Manager